IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Lynchburg Division

| | |
|---|---|
| US GHOST ADVENTURES, LLC, et al., | ) |
| Plaintiffs, | ) ) ) |
| v. | ) Case No. 6:25cv00048 |
| TOURS & CRAWLS, LLC, et al., | ) ) ) |
| Defendants. | ) |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**

COME NOW the defendants, Tours & Crawls, LLC ("Tours & Crawls") and Mike Carter ("Carter") (collectively, the "Defendants"), by counsel, pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, and respectfully state the following in support of their Motion to Dismiss:

**I.     Standard of Review**

1. Rule 12(b)(2) of the Federal Rules of Civil Procedure permits a party to seek dismissal of an action based on the lack of personal jurisdiction.

2. When personal jurisdiction is challenged, the question is one for the judge "with the burden on the plaintiff ultimately to prove the existence of a ground for jurisdiction by a preponderance of the evidence." Combs v. Bakker, 886 F.2d 673, 676 (4th Cir. 1989); see also New Wellington Fin. Corp. v. Flagship Resort Dev. Co., 416 F.3d 290, 294 (4th Cir. 2005).

3. While the court may resolve a jurisdictional challenge solely based on the complaint, motion to dismiss, and legal memoranda, the court may also consider extrinsic evidence and resolve any disputed facts material to the jurisdictional challenge. Combs, 886 F.2d at 676.

4. "[W]here the defendant has provided evidence which denies facts essential for jurisdiction, the plaintiff must, under threat of dismissal, present sufficient evidence to create a factual dispute on each

jurisdictional element which has been denied by the defendant and on which the defendant has presented evidence." Indus. Carbon Corp. v. Equity Auto & Equip. Leasing Corp., 737 F. Supp. 925, 926 (W.D. Va. 1990) (citing Gemini Enterprises, Inc. v. WFMY Television Corp., 470 F. Supp. 559, 565 (M.D.N.C. 1979)).

5. Determining whether personal jurisdiction exists is a two-step inquiry. The first step is determining whether the Virginia long-arm statute reaches the defendant, and the second step is determining whether the exercise of personal jurisdiction over the defendant comports with the Due Process Clause of the Fourteenth Amendment. English & Smith v. Metzger, 901 F.2d 36, 38 (4th Cir. 1990) (citing Peanut Corp. of Am. v. Hollywood Brands, Inc., 696 F.2d 311, 313 (4th Cir. 1982)).

6. However, "[b]ecause Virginia's long-arm statute extends personal jurisdiction to the outer bounds of due process, the two-prong test collapses into a single inquiry when Virginia is the forum state." Tire Eng'g & Distrib., LLC v. Shandong Linglong Rubber Co., 682 F.3d 292, 301 (4th Cir. 2012) (citing CFA Inst. v. Inst. of Chartered Fin. Analysts of India, 551 F.3d 285, 293 (4th Cir. 2009)).

7. "A Virginia court thus has jurisdiction over a nonresident defendant if the exercise of such jurisdiction is consonant with the strictures of due process." Id. at 301-02.

8. There are two types of personal jurisdiction that may be exercised over a nonresident defendant consistent with due process requirements: general jurisdiction and specific jurisdiction. Helicopteros Nacionales de Columbia S.A. v. Hall, 466 U.S. 408, 414-16 (1984).

9. Notably, where specific personal jurisdiction is claimed, the court must perform a claim-by-claim analysis,[1] as specific personal jurisdiction with respect to one claim does not permit the exercise

---

[1] Even a "count-by-count" determination of personal jurisdiction is insufficient, as multiple claims are sometimes lumped together in a single count. See, e.g., Edwards, 378 F. Supp. 3d at 491 (discussing the need to separately evaluate personal jurisdiction with respect to each allegedly defamatory statement, as each allegedly defamatory statement was a separate claim, even if all such statements were included in a single defamation count).

2

of personal jurisdiction with respect to other claims joined in the same proceeding. Edwards v. Schwartz, 378 F. Supp. 3d 468, 490-91 (W.D. Va. 2019) (citing Gatekeeper Inc. v. Stratech Sys., Ltd., 718 F. Supp. 2d 664, 667-68 (E.D. Va. 2010); Seiferth v. Helicopteros Atuneros, Inc., 472 F.3d 266, 274 (6th Cir. 2006)).

## II.  Factual Background

10. In their Complaint, Plaintiffs assert claims against Defendants for trademark infringement, service mark infringement, cybersquatting, false advertising, defamation, false light, and tortious inference. (ECF 1 ¶ 1).

11. At a high level, these claims are based on allegations that Defendants, who operate a ghost tour and pub crawl business in Annapolis, Maryland, have launched a smear campaign against Plaintiffs by registering domain names confusingly similar to those used by Plaintiffs, providing internet links and otherwise supporting small businesses that compete with Plaintiffs in other markets, and posting or otherwise disseminating false information regarding Plaintiffs. (ECF 1).

12. As discussed in more detail below, even if Plaintiffs' allegations of fact are accepted as true, this action should be dismissed for lack of personal jurisdiction.

## III.  Argument

13. As discussed in more detail below, Defendants are not subject to either general personal jurisdiction or specific personal jurisdiction, as (1) Defendants' contacts with Virginia are not so "systematic and continuous" as to render Defendants essentially at home in Virginia, and (2) Plaintiffs' claims do not arise from activities Defendants "purposefully directed" at residents of Virginia.

> **A.  Defendants are not subject to general personal jurisdiction, as their contacts with Virginia are not so "systematic and continuous" as to render Defendants essentially at home in Virginia.**

14. General personal jurisdiction may be exercised if the defendant's contacts with the forum state are "so 'continuous and systematic' as to render [the defendant] essentially at home in the forum state." <u>Daimler AG v. Bauman</u>, 571 U.S. 117, 138-39 (quoting <u>Goodyear Dunlop Tires Operations, S.A. v. Brown</u>, 564 U.S. 915, 919 (2011)).

15. The exercise of general personal jurisdiction is appropriate where the defendant is incorporated, where the defendant maintains a principal place of business, or in other forums in "exceptional" cases. <u>BNSF Ry. Co. v. Tyrrell</u>, 581 U.S. 402, 413 (2017) (quoting <u>Daimler</u>, 571 U.S. at 139 n.19). <u>See generally</u> <u>Daimler</u>, 571 U.S. at 138-39 (holding a defendant's sizeable sales in a forum were insufficient to render the defendant "at home" and subject to general personal jurisdiction in the forum).

16. Here, Tours & Crawls has never been incorporated in Virginia; has never registered to do business in Virginia; has never maintained a principal office in Virginia; has never appointed an agent to accept service of process in Virginia; and does not have any owners, officers, or employees who reside in Virginia. <u>See</u> Exhibit A (Carter Decl. ¶¶ 2-4).

17. Furthermore, Defendants have never owned, leased, or rented any property in Virginia; have never maintained any offices or places of employment in Virginia; and have never specifically targeted Virginia with marketing efforts or advertising campaigns related to Tours & Crawls' services. <u>See</u> Exhibit A (Carter Decl. ¶¶ 5-7).[2]

---

[2] While Tours & Crawls' website references and/or contains links to the websites of other ghost tour companies, including some located in Virginia, Tours & Crawls is not affiliated in any way with these other ghost tour companies. Moreover, Tours & Crawls does not receive a referral fee or otherwise profit from the references/links. <u>See</u> Exhibit A (Carter Decl. ¶ 8). In addition, the

18. Still further, Carter has no record or recollection of Tours & Crawls or himself conducting any business in Virginia.  See Exhibit A (Carter Decl. ¶ 9).

19. Such minimal contacts with Virginia do not render this an "exceptional" case where the exercise of general personal jurisdiction is warranted.

    **B.**     **Defendants are not subject to specific personal jurisdiction, as Plaintiffs' claims do not arise from activities Defendants "purposefully directed" at residents of Virginia.**

20. Specific personal jurisdiction may only be exercised where the defendant "'purposefully directed' his activities at residents of the forum, and the litigation results from alleged injuries that 'arise out of or relate to' those activities." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985) (internal citations omitted).

21. The Fourth Circuit has established a three-part test for evaluating specific personal jurisdiction. Under this test, a court should consider: "'(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable.'" Consulting Eng'rs Corp. v. Geometric Ltd., 561 F.3d 273, 278 (4th Cir. 2009) (quoting ALS Scan, Inc. v. Digital Serv. Consultants, Inc., 293 F.3d 707, 712 (4th Cir. 2002)).

22. With respect to the first prong, the Fourth Circuit has provided a nonexclusive list of factors to consider in determining whether there has been a purposeful availment. These factors include:

- whether the defendant maintains offices or agents in the forum state;
- whether the defendant owns property in the forum state;
- whether the defendant reached into the forum state to solicit or initiate business;
- whether the defendant deliberately engaged in significant or long-term business activities in the forum state;

---

website content was not created in Virginia or uploaded to the website in Virginia. Id. (Carter Decl. ¶ 10).

- whether the parties contractually agreed that the law of the forum state would govern disputes;
- whether the defendant made in-person contact with the resident of the forum in the forum state regarding the business relationship;
- the nature, quality and extent of the parties' communications about the business being transacted; and
- whether the performance of contractual duties was to occur within the forum.

Id. (internal citations omitted).

23. Moreover, recognizing the consideration of these factors can be complicated where internet-based activity is involved,[3] the Fourth Circuit has clarified that internet-based activity supports the exercise of specific personal jurisdiction where a party "(1) directs electronic activity into the State, (2) with the manifested intent of engaging in business or other interactions with the State, and (3) that activity creates, in a person within the State, a potential cause of action cognizable in the State's courts." ALS Scan, 293 F.3d at 714.

24. Several cases are illustrative of how the Fourth Circuit and this Court have applied the foregoing factors in determining whether internet-based activity constituted a purposeful availment.

25. In Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc., the Fourth Circuit considered whether an Illinois corporation was subject to personal jurisdiction in Maryland based on the operation of an internet site that allegedly infringed on a Maryland company's trademark rights. 334 F.3d 390, 393 (4th Cir. 2003). The plaintiff argued there was personal jurisdiction because the defendant set up a semi-interactive website that was accessible from Maryland, and because the defendant maintained a business relationship with a Maryland-based web hosting company. Id. at 398. In addition, the plaintiff cited the defendant's acceptance of donations from Maryland residents,

---

[3] Among other things, the Fourth Circuit noted that, if placing content on the internet rendered a party subject to personal jurisdiction in any forum where the content could be reviewed on the internet, then "State jurisdiction over persons would be universal, and the notions of limited State sovereignty and personal jurisdiction would be eviscerated." ALS Scan, 293 F.3d at 712-13.

the defendant's transmission of e-mails and promotional materials to Maryland residents who made donations, and the defendant's establishment of a twenty-four-hour toll-free hotline that could be used by Maryland residents to make donations or obtain goods or services. Id. The Fourth Circuit held these contacts were insufficient to support the exercise of personal jurisdiction. Id. at 401. In support of its ruling, the Fourth Circuit noted the only "concrete evidence" of internet-based exchanges between the defendant and Maryland residents was a single donation made by counsel for the plaintiff for the ostensible purpose of bolstering his client's case. Id. In addition, the Fourth Circuit described the defendant's website as having a "strongly local character," emphasizing the defendant's Illinois-based mission to assist Chicago area women in pregnancy crisis, and only reaching out to Maryland residents as part of a general request to everyone to make donations. Id. The fact the plaintiff suffered the brunt of the harm in Maryland was insufficient to overcome the lack of minimum contacts. Id.

26. In Fidrych v. Marriott International, Inc., the Fourth Circuit considered whether Marriott, a Delaware corporation with a principal place of business in Maryland, was subject to personal jurisdiction in South Carolina based on an incident that occurred at a Marriott-affiliated hotel in Italy. 952 F.3d 124, 128 (4th Cir. 2020). The plaintiff argued there was personal jurisdiction based on the operation of ninety Marriott brand hotels in South Carolina, sixty-three of which were operated by franchisees and the remaining twenty-seven of which were either licensed or managed by Marriott. Id. Furthermore, the plaintiff argued that Marriott was registered to transact business in South Carolina, that Marriott maintained an interactive website that allowed individuals to input their personal information and reserve rooms at Marriott brand hotels, and that a travel agent used the Marriott website to reserve the plaintiff's room at the hotel in question. Id. at 128-29, 139. Still further, the plaintiff argued that, prior to the incident in question, he reviewed the Italian hotel at issue on Marriott's website. Id. at 129. The Fourth Circuit held these contacts were insufficient to support

7

the exercise of personal jurisdiction over Marriott in South Carolina. Id. at 140. In support of its ruling, the Fourth Circuit stated the Marriott website was accessible to anyone with an internet connection and did not target South Carolina residents any more than it targeted residents of other states. Id. at 141. In addition, the Fourth Circuit distinguished the short-term hotel bookings made on Marriott's website from the long-term contracts with repeated transmission of computer files that had supported findings of personal jurisdiction in past cases. Id. at 141-42.

27. In Young v. New Haven Advocate, the Fourth Circuit considered whether two Connecticut-based newspapers and their staff members were subject to personal jurisdiction in Virginia based on internet news articles that allegedly defamed the warden of a Virginia prison in connection with the articles' discussion of Connecticut housing some of its prisoners in Virginia prisons. 315 F.3d 256, 258 (4th Cir. 2002). The plaintiff argued there was personal jurisdiction based on the intentional discussion and defamation of a known Virginia resident in the articles, the posting of the articles online such that they could be accessed in Virginia, and the plaintiff's suffering of reputational harm in Virginia. Id. at 261-62. The Fourth Circuit held these contacts were insufficient to support the exercise of personal jurisdiction over the defendants. Id. at 258-59. In support of its ruling, the Fourth Circuit noted the content of both newspapers' websites was "decidedly local" to Connecticut (e.g., local weather, local traffic reports, etc.), did not contain advertisements targeting a Virginia audience, and generally included articles of interest to the Connecticut market. Id. at 263. In addition, the Fourth Circuit noted that, while the articles at issue discussed a Virginia warden and the conditions at his prison, the primary purpose of the articles was to encourage debate over a Connecticut policy of transferring prisoners to Virginia institutions. Id. at 263-64.

28. Finally, in Edwards v. Schwartz, the Western District of Virginia considered whether several non-resident defendants were subject to personal jurisdiction in Virginia based on a years-long smear

8

campaign prosecuted against a Virginia Tech professor who helped expose contaminated water issues in Flint, Michigan. 378 F. Supp. 3d 468, 477-78 (W.D. Va. 2019). Pertinent to the jurisdictional analysis, the smear campaign included a multitude of allegedly defamatory e-mails, social media posts, keynote speeches, and interview statements. Id. at 478-79. In various places, these communications referred to the plaintiff's association with Virginia Tech, criticized the plaintiff's conduct as being "abhorrent behavior for a [p]rofessor," and suggested the plaintiff's behavior was rubbing off on his students (at Virginia Tech). Id. at 482-83. The Court held these contacts were insufficient to support the exercise of personal jurisdiction. Id. at 294. In support of its holding, the Court noted the communications at issue did not specifically target residents of Virginia (or any other forum). Id. In addition, the Court cited the lack of evidence that any of the communications at issue were published in Virginia or of special interest to Virginia readers. Id. The fact the plaintiff suffered the brunt of the harm in Virginia was insufficient to overcome the lack of minimum contacts. Id.

29. Against this legal backdrop, the facts of the present case do not support the exercise of specific personal jurisdiction over Defendants.

30. As noted above, Defendants have never maintained any offices or places of employment in Virginia; have never appointed an agent to accept service of process in Virginia; do not have any owners, officers, or employees who reside in Virginia; have never owned, leased, or rented any property in Virginia; and have no record or recollection of conducting any business in Virginia. See Exhibit A (Carter Decl. ¶¶ 2-6, 9).

31. Furthermore, this case does not arise from or relate to any contractual relationship or other business dealings between the parties, who Plaintiffs concede are competitors. (ECF 1 ¶ 22). Thus, there are no forum selection clauses, in-person business dealings in Virginia, or the like to consider as part of the jurisdictional analysis.

32. Still further, Defendants did not direct electronic activity into Virginia with the manifested intent of engaging in business or other interactions with Virginia (much less do so in a fashion that gave rise to every one of the claims asserted by Plaintiffs in this lawsuit).

33. As Carter indicates in his Declaration, he registered the domain name usaghostadventures.com while in Maryland, and none of the information appearing on said website was created in Virginia or uploaded to the website in Virginia. See Exhibit A (Carter Decl. ¶ 11).

34. These facts notwithstanding, Plaintiffs claim Defendants used the website to "wrongfully divert customers and business away from USGA (and direct those customers to Defendants and other competing tours)." (ECF 1-1 ¶ 22). However, even if this allegation is accepted as true, the alleged misconduct was not purposefully directed toward Virginia. Instead, the website linked to tours nationwide and invited requests for listings from any locally owned ghost tour companies, regardless of their geographic location. (ECF 1-3). Moreover, even the references and/or links to competing tours in Virginia should not be construed as specifically targeting Virginia residents, as it is reasonable to assume residents of other states might book ghost tours while visiting Virginia on vacation.

35. Plaintiffs' allegations regarding the "Local Ghost Adventures" page on the Tours & Crawls website fail for similar reasons. Indeed, just like the usaghostadventures.com website, the "Local Ghost Adventures" page links to tours nationwide and does not target Virginia residents any more than it targets the residents of other states. (ECF 1 ¶¶ 34, 36-37).

36. In connection with the aforementioned websites, Plaintiffs allege that Defendants acted in bad faith, targeting and intending to harm all locations where Plaintiffs operate ghost tours, including locations in Virginia. (ECF 1-1 ¶¶ 23-24). However, this argument focuses on where Plaintiffs stood to suffer harm, which is only a part of the personal jurisdictional analysis. Moreover, the argument actually detracts from Plaintiffs' position, as it demonstrates that Plaintiffs operate in numerous states,

which means not all alleged harm (and perhaps not even a significant portion of the alleged harm) would be suffered in Virginia.

37. Plaintiffs also take issue with Defendants' registration of the trade name "Annapolis Ghost Adventures" in Maryland for use in connection with Defendants' ghost tour operations in Maryland. (ECF 1 ¶ 30). However, as the registration and/or use of "Annapolis Ghost Adventures" were in Maryland, they cannot support the exercise of personal jurisdiction over Defendants in Virginia.

38. Plaintiffs then discuss a series of allegedly defamatory blog posts. (ECF 1 ¶¶ 39-46). However, these blog posts were not authored in Virginia, were not uploaded to the internet in Virginia, were not prepared based on information gathered in Virginia, and did not specifically target a Virginia audience. See Exhibit A (Carter Decl. ¶ 14).

39. In addition, most of the blog posts discuss the competition between national and local ghost tour companies in general (ECF 1-7, 1-8, 1-9, 1-10), with various posts referencing local ghost tours, legal disputes, and/or other conflicts in Maryland, Massachusetts, Texas, North Carolina, Arizona, Florida, Rhode Island, and California (ECF 1-7, 1-8, 1-9, 1-10, 1-11, 1-12). Notably, the only reference to Virginia identified in any of the blog posts is a reference to a local ghost tour operator meeting Lance Zaal in Williamsburg several years before Zaal launched USGA. (ECF 1-10).

40. Plaintiffs next cite a news article published by The Baltimore Banner, alleging the article contains various defamatory statements attributed to Carter. (ECF 1 ¶ 52). However, as Carter indicates in his Declaration, he was physically located in Maryland when he was interviewed in connection with the article. Moreover, at the time of the interview (and currently), Carter understood The Baltimore Banner to be a Baltimore-based news outlet that generally covers stories related to Baltimore and select other parts of Maryland. See Exhibit A (Carter Decl. ¶ 15).

11

41. In addition, much like the blog posts discussed above, the news article does not specifically target Virginia. Instead, the news article attributes to Carter certain comments regarding competition with his Annapolis, Maryland company. (ECF 1-13). The article also references disputes in Florida, Arizona, Rhode Island, California, Texas, and Massachusetts but, notably, does not reference any disputes in Virginia. (ECF 1-13).

42. Plaintiffs go on to mention various YouTube comments, social media comments, and other postings, some of which were not even made by employees or agents of Defendants. (ECF 1 ¶¶ 47, 53, 59, 64-65). Indeed, Melissa Rowell is not affiliated in any way with Tours & Crawls, and Melissa Huston is an independent contractor whose contractual duties do not include commenting on the legality, ethics, etc. of Plaintiffs' operations. See Exhibit A (Carter Decl. ¶¶ 19-20). As for the social media posts/comments actually made by Defendants, the vast majority (if not all) were made in Maryland, Carter has no recollection of making any of his posts/comments while in Virginia, and none of the posts/comments specifically target Virginia. See Exhibit A (Carter Decl. ¶ 16); Exhibit B (Huston Decl. ¶¶ 3-5).

43. In fact, much like the blog posts and news article discussed above, the social media posts/comments (many of which were made by third-parties) address issues on a national level or in Maryland, with other state-level references to Massachusetts, Iowa, Florida, New Mexico, California, and Pennsylvania and one international reference to the United Kingdom. (ECF 1-18, 1-20, 1-21). Notably, Defendants have not identified any direct references to operations in Virginia.

44. Plaintiffs next touch on the alleged editing of USGA's Google Business Profile, which Plaintiffs attribute to either Carter or a third-party "[u]pon information and belief." (ECF 1-1 ¶¶ 71-72). While Defendants cannot speak to any editing done by others, Carter acknowledges asking Google to edit USGA's Google Business Profile based on his concern that USGA was in violation of

12

Google's Terms of Service with respect to classification as a national chain. Notably, however, Carter made these requests while located in Maryland, and the requests were related to USGA's operations in Maryland. See Exhibit A (Carter Decl. ¶ 21). Even if Defendants also made the alleged edits related to USGA's operations in Baltimore, Washington, D.C., and/or Orlando (which they did not), these edits have nothing to do with Virginia besides involving a Virginia company. (ECF 1-1 ¶¶ 71-72).

45. Finally, Plaintiffs take issue with Defendants' alleged interference with Plaintiffs' contracts or business relations with Visit Annapolis and Destination Travel Network. (ECF 1-1 ¶¶ 73-77). With respect to these allegations, Carter acknowledges he approached Visit Annapolis after receiving a telephone call about a credit card being declined in connection with a charge for service he had not requested. Carter advised Visit Annapolis that USGA was a different company than his company (Tours & Crawls), and that a third-party had told him USGA was listing the third-party's address as USGA's business address without authorization. Even if these communications were improper and/or actionable (which Defendants deny), the communications relate solely to USGA's operations in Maryland – not Virginia. See Exhibit A (Carter Decl. ¶ 22).

46. At the end of the day, Defendants' alleged knowledge that their statements could by viewed by Virginia residents and might cause harm to Plaintiffs in Virginia is insufficient to support the exercise of specific personal jurisdiction in this case. See generally Young, 315 F.3d 256 (finding no personal jurisdiction in a case involving the publication of allegedly defamatory news articles about a Virginia resident despite knowledge the articles could be viewed online by Virginia residents and could cause reputational harm in Virginia).

47. The alleged intellectual property violations and internet links (provided without compensation) to competing tours, including four such tours in Virginia, do not change the outcome. See generally Fidrych, 952 F.3d 124 (finding no personal jurisdiction despite a website permitting forum residents

13

to book and pay for hotel reservations at Marriott-affiliated hotels, including ninety such hotels in the forum as well as the out-of-forum hotel where the plaintiff was injured); Carefirst, 334 F.3d 390 (finding no personal jurisdiction in a case involving the operation of a website that infringed on trademark rights, the solicitation of donations from forum residents, and an offer to provide goods or services to forum residents).

48. Likewise, the quantity of allegedly defamatory or otherwise actionable statements does not change the outcome, as none of the statements at issue specifically targeted a Virginia audience. See generally Edwards, 378 F. Supp. 3d 468 (performing a statement-by-statement analysis and finding no personal jurisdiction over a slew of allegedly defamatory statements related to a Virginia Tech professor, as none of the statements were of special interest to Virginia residents).

49. Accordingly, the Court should dismiss this action for lack of personal jurisdiction.

WHEREFORE the defendants, Tours & Crawls, LLC and Mike Carter, respectfully request that the Court dismiss this action for lack of personal jurisdiction and award Defendants the costs incurred in defense of this action and any additional relief the Court deems just and appropriate.

TOURS & CRAWLS, LLC and
MIKE CARTER

_____/s/_____
G. Christopher Jones, Jr., Esq. (VSB #82260)
Raymond J. Sinnott, IV, Esq. (VSB #77322)
SINNOTT, NUCKOLS & LOGAN, P.C.
13811 Village Mill Drive
Midlothian, Virginia 23114
(804) 893-3864 (Jones)
(804) 893-3871 (Sinnott)
(804) 378-2610 (Facsimile)
cjones@snllaw.com
jsinnott@snllaw.com
*Counsel for Tours & Crawls, LLC and Mike Carter*

**CERTIFICATE OF SERVICE**

I hereby certify that, on this 25th day of July, 2025, a true and accurate copy of the foregoing Memorandum of Law was filed with the Clerk of Court using the CM/ECF system, which will send a notification of such filing to all counsel of record.

                                           /s/
                                   G. Christopher Jones, Jr., Esq.