# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### LYNCHBURG DIVISION

| | | |
|---|---|---|
| US GHOST ADVENTURES, LLC, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| LANCE ZAAL, individually, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | **Case No.: 6:25-cv-00048-NKM** |
| | ) | |
| TOURS & CRAWLS, LLC, | ) | |
| | ) | |
| TOURS & CRAWLS, LLC d/b/a | ) | |
| ANNAPOLIS GHOST ADVENTURES, | ) | |
| | ) | |
| TOURS & CRAWLS, LLC d/b/a | ) | |
| ANNAPOLIS GHOST TOURS, | ) | |
| | ) | |
| TOURS & CRAWLS, LLC d/b/a | ) | |
| ANNAPOLIS GHOSTS, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| MIKE CARTER, individually, | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' RULE 12(b)(2) MOTION TO DISMISS

Joshua F. P. Long (VSB No. 65684)
Joshua R. Treece (VSB No. 79149)
Christine S. Ward (VSB No. 97744)
WOODS ROGERS VANDEVENTER BLACK PLC
10 S. Jefferson Street, Suite 1800
Roanoke, Virginia 24038-4125
Telephone: (540) 983-7600
Facsimile: (540) 983-7711
josh.long@woodsrogers.com joshua.treece@woodsrogers.com
christine.ward@woodsrogers.com

*Counsel for Plaintiffs US Ghost Adventures, LLC and Lance Zaal*

0

Plaintiffs US Ghost Adventures, LLC ("USGA") and its owner, Lance Zaal ("Zaal") (collectively, "Plaintiffs"), by counsel, hereby file their Memorandum in Opposition to the Rule 12(b)(2) Motion to Dismiss filed by Defendants Tours & Crawls, LLC ("Tours & Crawls") and its owner, Mike Carter ("Carter"), in his individual capacity (collectively, "Defendants").

## I. STATEMENT OF JURISDICTIONAL FACTS

USGA is a Virginia limited liability company that offers a wide spectrum of year-round hospitality and touring services, along with related goods, including clothing, souvenirs, and merchandise. Compl. ¶¶ 2, 9; **Exhibit A**, Zaal Decl. ¶ 2. USGA has substantial business operations in Virginia, and operates year-round tours and pub crawls (along with sales of related goods and services) in thirteen cities across Virginia, namely: Alexandria, VA, Blacksburg, VA, Charlottesville, VA, Fredericksburg, VA, Hampton, VA, Lynchburg, VA, Norfolk, VA, Richmond, VA, Roanoke, VA, Staunton, VA, Virginia Beach, VA, Williamsburg, VA, and Yorktown, VA. Compl. ¶ 11; Zaal Decl. ¶ 3. Zaal is the owner of USGA. Compl. ¶ 3.

The vast majority of USGA's bookings (i.e., ticket sales) for its Virginia tours and pub crawls are made through USGA's website, under its registered domain name USGHOSTADVENTURES.COM. Zaal Decl. ¶ 4. The majority of USGA's website bookings for its Virginia operations are ordered more than a day or weeks in advance. *Id.* ¶ 5. More than a third of those bookings are made more than two days in advance. *Id.* In this industry, out-of-town customers tend to book tours more than two days in advance. *Id.*

USGA also operates year-round tours (and sells related goods and services) in nearby locales, including Annapolis, Maryland, which is just 40 miles from its USGA tour operations in Alexandria, Virginia. Compl. ¶ 12; Zaal Decl. ¶ 6. The majority of USGA's bookings for its Maryland operations, including its Virginia-proximate Annapolis, Maryland operation, are made

1

through its website, USGHOSTADVENTURES.COM. Zaal Decl. ¶ 7. The majority of USGA's bookings for its Maryland operations are ordered more than a day in advance. *Id.* Nearly half of USGA's bookings for its Maryland operations are ordered more than two days in advance, which indicates those bookings are typically out-of-town customers and include nearby Virginia residents. *Id.*

Tours & Crawls operates competing tours and pub crawls in Annapolis, Maryland. Compl. ¶ 4; Zaal Decl. ¶ 8. Carter is the owner and registered agent of Tours & Crawls. Compl. ¶ 5; Zaal Decl. ¶ 8. According to its website, Tours & Crawls requires advanced ticket purchases. *See* https://www.annapolisghosts.com/faq-s ("Q: Do I need to buy tickets in advance? A: Yes, advance ticket purchase is required as tours do sell out ...."). Like USGA, Tours & Crawls offers bookings directly on and through its website. Zaal Decl. ¶ 9.

USGA has hundreds of Virginia-based customers that book tours from Virginia for USGA's own Maryland tour locations using USGA's website. *Id.* ¶ 10. USGA generates substantial revenue from Virginia-based customers who book and travel to USGA's Maryland tours from Virginia. *Id.* Based on Zaal's experience in the industry and with USGA's own Annapolis, Maryland operations, it is highly probable and reasonable to conclude that:  (1) a substantial portion of Tours & Crawls's customers are Virginia residents and located in nearby Virgina; (2) a substantial portion of Tours & Crawls's Virginia customers book tours from Virginia using Tours & Crawls's website; (3) Tours & Crawls generates substantial revenue from Virginia customers through its website; and (4) Tours & Crawls is likely aware that nearby Virginia customers are a substantial component of its customer and revenue base. *Id.* ¶ 11. Defendants have offered no evidence to the contrary.

USGA, through its Virginia affiliate, Colonial Ghosts, LLC, owns U.S. Service Mark Registration No. 6046260 for the word mark US GHOST ADVENTURES (the "Service Mark") which covers a variety of services, including conducting guided tours of historical sites. Compl. ¶ 14, Ex. 1; Zaal Decl. ¶ 12. The Service Mark was issued on the Principal Register by the United States Patent and Trademark Office on May 5, 2020. Compl. ¶ 14, Ex. 1; Zaal Decl. ¶ 12.

Since at least September 2023, Defendants have engaged in a targeted campaign to, among other things, vilify, defame and disparage, competitively harm, and interfere with USGA, its business, employees, products, and services in Virginia. Compl. ¶ 17; Zaal Decl. ¶ 13. In furtherance of these goals, Carter, in his individual capacity and on behalf of all Defendants, created and registered, via GoDaddy.com, the confusingly similar and infringing domain name USAGHOSTADVENTURES.COM in March 2024 to establish a counterfeit version of USGA's website using the confusingly similar and infringing mark "USA Ghost Adventures." Compl. ¶ 18; Zaal Decl. ¶ 14. As noted in connection with a related World Intellectual Property Organization ("WIPO") administrative proceeding, Carter registered and used the infringing domain name "in bad faith," and Carter "who is himself a ghost tour operator and a writer and blogger familiar with the industry, was clearly aware of [USGA] and its mark and likely selected the disputed domain name [USAGHOSTADVENTURES.COM] in emulation of that mark." Compl. ¶ 19, Ex. 2 at 5.

Defendants infringed USGA's mark with the intent and purpose of harming USGA in Virginia, and the Service Mark owned by USGA through its affiliate Colonial Ghosts, LLC, which is headquartered in Richmond, Virginia and operates in Williamsburg, Virginia. Zaal Decl. ¶ 15. Defendants' infringing website included active links to tours that compete against USGA's in Virginia, including competing tours in Alexandria, VA (hyperlinking to USGA competitor Alexandria Colonial Tours, https://www.alexcolonialtours.com/), Lynchburg, VA (hyperlinking

to USGA competitor Lynchburg Ghost Tours, https://www.lynchburgghosttours.com/), Richmond, VA (hyperlinking to USGA competitor Haunts of Richmond, https://www.hauntsofrichmond.com/), and Williamsburg, VA (hyperlinking to USGA competitor The Original Ghost Tour of Williamsburg, https://theghosttour.com/). *Id.* ¶ 18.

Like USGA, these competing tours in Alexandria, Lynchburg, Richmond, and Williamsburg, Virginia offer online booking and online sales of goods and services via their own websites. *Id.* ¶ 19. Defendants intentionally included hyperlinks to these active websites and sales platforms for USGA competitor tours in Alexandria, Lynchburg, Richmond, and Williamsburg, Virginia on their infringing website USAGHOSTADVENTURES.COM, and excerpts of these active links and online sales platforms are included below:

| Alexandria Colonial Tours, https://www.alexcolonialtours.com/ | Lynchburg Ghost Tours, https://www.lynchburgghosttours.com/ |
|---|---|



| Haunts of Richmond, https://www.hauntsofrichmond.com/ | The Original Ghost Tour of Williamsburg, https://theghosttour.com/ |
|---|---|





*See, e.g.*, **Exhibit B** (relevant excerpts of webpages); Zaal Decl. ¶ 20. Thus, Defendants intentionally, and in bad faith, used a confusingly similar mark to USGA's Service Mark on their infringing website with the specific intent of, among other things: (1) targeting Virginia customers of USGA and Virginia residents, (2) diverting Virginia customers and residents from USGA's Virginia tours and pub crawls to competing Virginia tours and crawls, and (3) harming USGA's business and operations in Virginia. Zaal Decl. ¶ 21.

As the WIPO Administrative Panel ("WIPO Panel") found, the infringing "website is more than merely informational: it **links directly to more than 60 commercial websites** of the Complainant's competitors, including the Respondent's **own website at 'www.toursandcrawls.com.'**" Compl. Ex. 2, at 5 (emphasis added). And the WIPO Panel found that the website "fit[ ] the paradigm of **misleading Internet users for commercial gain** using a domain name that is confusingly similar to a trademark." *Id.* at Ex. 2, at 4 (emphasis added). As shown above, Defendants specifically targeted USGA's business, including its business operations in Virginia, with active links to divert sales and customers away from USGA's Virginia operations, among others.

Even after the WIPO Panel found that USAGHOSTADVENTURES.COM was created with the intent to infringe USGA's Service Mark and mislead internet users for commercial gain, Defendants continued to specifically target Virginia customers and residents through their own

5

website[1] and local ghost tours page, WWW.ANNAPOLISGHOSTS.COM/LOCAL-GHOST-TOURS. Zaal Decl. ¶ 22. Defendants continued (and to this day continue) to market the same Virginia tours and crawls to Virginia residents and customers in Alexandria, Lynchburg, Richmond, and Williamsburg, VA. *Id.* ¶ 23. At the time this action was filed, Defendants' own webpage included the predominate "Ghost Adventures" component of USGA's Service Mark and included an active hyperlink to USGA competitor Alexandria Colonial Tours, https://www.alexcolonialtours.com/:



Compl. ¶ 37; Zaal Decl. ¶ 24. To this day, Defendants continue to use their own website to actively target Virginia customers and residents, to market USGA competitor tours in Alexandria, Lynchburg, Richmond, and Williamsburg, VA, and direct Virginia customers and residents to USGA competitor Alexandria Colonial Tours, via hyperlink, https://www.alexcolonialtours.com/:



---

[1] In April 2024, Tours & Crawls's website used the domain name TOURSANDCRAWLS.COM. In or around October 2024, its domain name was changed to ANNAPOLISGHOSTS.COM.



[https://www.annapolisghosts.com/local-ghost-tours](https://www.annapolisghosts.com/local-ghost-tours); Zaal Decl. ¶ 25.

As set forth in the Complaint, Defendants continued their targeted campaign to, among other things, vilify, defame and disparage, competitively harm, and interfere with USGA, its business, owner, employees, products, and services *in Virginia* through countless false, defamatory, and deceptive claims and statements about Plaintiffs and false or misleading descriptions of fact in commercial marketing that misrepresent the nature, characteristics, and quality of USGA's goods, services, and commercial activities in online forums, online marketing channels, social media platforms, and direct communications with customers, prospective customers, business partners, and prospective business partners. Compl. ¶ 39; Zaal Decl. ¶ 26.

These false, disparaging, and misleading statements about Zaal, USGA, and its goods, services, and commercial activities were predominately published by Defendants on the same websites (USAGHOSTADVENTURES.COM and Defendants' own website) that Defendants used to specifically target Virginia customers and residents, as set forth above. These false, disparaging, and misleading statements are set out in detail in the Complaint. Zaal Decl. ¶ 27.

### a.  FALSE, DEFAMATORY, DISPARAGING, AND MISLEADING STATEMENTS DIRECTED TO VIRGINIA VIA USAGHOSTADVENTURES.COM

Defendants published a series of blog posts containing false, defamatory, disparaging, and misleading statements about Zaal, USGA, and its goods, services, and commercial activities on their infringing USA Ghost Adventures website, which specifically targeted visitors from Virginia. Defendants' decision to publish these statements in blog format on the site that targeted Virginia demonstrates their intent to attract readers and a Virginia-based audience.

7

On April 3, 2024, Defendants published a blog post that referred to national ghost tour companies, and specifically USGA, as "predatory," "shady," "corporate raiders," "unscrupulous," and "out of town charlatans." Compl. Ex. 7; Zaal Decl. ¶ 28. Defendants singled out USGA's competing ghost tour operation in Annapolis and falsely stated that:

> [T]hese *ethically ambiguous* **opportunists** have set their sights on locally owned and operated Ghost Tours and Pub Crawls. **Their goals, to put the locals out of business, and claim their market share.** They send in advance teams who methodically, **deceptively**, and stealthily **move into new geographic areas**; … **[they]** *sneak onto those established company's tours* **with the** *sole objective to steal their intellectual property in the form of ghost tour content and stories*. **Which they then change around slightly, and claim as local, unique, and authentic.** They are none of these!

Compl. Ex. 7 (emphasis added); Zaal Decl. ¶ 28.

As Defendants are undoubtedly aware, Annapolis, Maryland is approximately 40 miles from Virginia. Defendants knew that the Virginia customers and residents they specifically targeted through their infringing website would be expected to read their blog post falsely alleging that USGA's "goal[ was] to put the locals out of business, and claim their market share," that USGA "methodically, deceptively, and stealthily move[s] into new geographic areas," and that it "sneak[s] onto those established company's tours with the sole objective to steal their … ghost tour content and stories." Compl. Ex. 7. Through their misleading and disparaging insinuations that USGA would "put the [nearby Annapolis] locals out of business," then "move into new geographic areas," Defendants sought to reach a Virginia audience (among others) and harm Plaintiffs' ability to conduct business in Virginia. *Id.*

On April 16, 2024, Defendants republished a blog post titled "Local Business Under Attack by National Chain US Ghost Adventures." *Id.* at Ex. 8; Zaal Decl. ¶ 29. In this post, Defendants referred to USGA as "[t]he most egregious" of the "big national chains," and falsely stated that:

8

> They **bully small local tour operators**, most with less than five employees, who are supporting themselves and their families with the revenue their small business generates. **Companies like *US Ghost Adventures don't play fair, violate the law, and are actively involved in fraud and deceptive business practices*. They capitalize on the hard earned reputations of small local companies,** *steal their hard work and research, intellectual property, and violate their trademarks*, **hoping they'll sue and be forced to spend large amounts of money until they give up on costly litigation, or shutter their businesses.**

Compl. Ex. 8 (emphasis added); Zaal Decl. ¶ 29. Defendants also included disparaging commentary regarding USGA's ongoing litigation over its Lizzie Borden trademark, further characterizing USGA as an "industry pariah." Compl. Ex. 8; Zaal Decl. ¶ 29.

Defendants posted again on April 21, 2024, making false and misleading statements that USGA "and its apparently ethically-challenged owner Lance Zaal, have allegedly made it a standard business practice to violate and infringe small, locally-owned Ghost Tour companies' trademarks." Compl. Ex. 9; Zaal Decl. ¶ 30. Defendants included additional false, disparaging narratives about Plaintiffs:

> **[T]hey are accused of deceptive business practices beyond just the trademark infringements, such as claiming local company's pre-existing Google Business pages as their own**, and in the case of at least one company, 20 years of customer reviews son [*sic*] comments. Additionally, **there is direct recorded proof of the company willfully redirecting USGA's negative customer reviews to the Google reviews pages of their competitors, while directing all positive reviews to their own Google reviews page**.
>
> Purportedly, **Lance Zaal has stated that it is his goal to either drive the local company out of business, or force them to hire costly Patent & Trademark attorneys to bring expensive litigation against USGA. And, then settling the matter by grudgingly removing any offending violation before the matter can adjudicated and a ruling against USGA. But, not before forcing the small local businesses to dole out upwards of $10K to force the matter into court.** Money which is hard to come by for a small company with limited revenue and resources to fight a corporate behemoth like USGA.

Compl. Ex. 9 (emphasis added); Zaal Decl. ¶ 30. As with their prior posts, Defendants published these statements with the knowledge and expectation that the Virginia customers and residents they targeted through USA Ghost Adventures would likely read—and further disseminate—Defendants' false and defamatory assertions about Plaintiffs in Virginia.

### b.   FALSE, DEFAMATORY, DISPARAGING, AND MISLEADING STATEMENTS DIRECTED TO VIRGINIA VIA DEFENDANTS' WEBSITE

Even after the WIPO Panel's finding that Defendants created the USA Ghost Adventures website with the intent to infringe USGA's Service Mark and mislead internet users for commercial gain, Defendants continued to specifically target Virginia customers and residents through their own website, actively marketing and directing potential and actual USGA customers to competitor ghost tours throughout Virginia. In furtherance of their overarching plan to cause Plaintiffs competitive and reputational harm, Defendants continued making and publishing defamatory statements on their website's blog, The Ghost Writer,[2] with the knowledge and expectation that such statements would be read by targeted site visitors in Virginia. *See, e.g.*, Compl. ¶¶ 41–42, 44.

On January 2, 2025, Defendants posted a photo of Zaal, adding the caption "Lance Zaal, owner of US Ghost Adventures, under legal and civil scrutiny for his *questionable, deceptive, fraudulent, if not illegal business practices*." *Id.* at Ex. 10 (emphasis added). In a separate blog post, Defendants made misleading claims about USGA and "its apparently morally-challenged owner, Lance Zaal … chang[ing] the name of their Google Business Listing … to mimic Annapolis

---

[2] In April 2024, Tours & Crawls's website used the domain name toursandcrawls.com, and its blog was named "The Ghost Writer." Upon information and belief, in October 2024, its domain name was changed to annapolisghosts.com and its blog was renamed to "The Ghost Writer Blog." Plaintiffs will refer to both versions of Tours & Crawls's blog as "The Ghost Writer" for ease of reference.

Ghost Tours & Crawls," and falsely accused USGA of "intentionally trying to deceive [customers]!" *Id.* at Ex. 11.

Similarly, on February 5, 2025, Defendants published additional baseless and misleading statements about Plaintiffs on The Ghost Writer and Tours & Crawls's social media. Defendants reiterated their disparaging characterization of Zaal as "ethically challenged," and stated: "Apparently, if [Zaal] can't beat us fairly, he just tries to cheat. Seems like an act of desperation by a supposedly successful business man whose market share is slipping away." *Id.* at Ex. 12. Defendants published these statements on their website blog to confuse and mislead Virginia customers and residents—who were specifically targeted through Defendants' website and thus an expected audience for these blog posts.

Further, Defendants republished the false, disparaging, and misleading blog posts from their infringing USA Ghost Adventures website on The Ghost Writer—sometimes more than once—to reach a larger audience of potential and actual USGA customers and business partners, including the Virginia customers and residents they targeted.

### c. VIRGINIA RESIDENTS HAVE COMMENTED ON, ADOPTED & PERPETUATED DEFENDANTS' FALSE, DEFAMATORY & MISLEADING STATEMENTS

Even without jurisdictional discovery, it is apparent that Defendants have succeeded with their targeted campaign directed to Virginia-based customers and residents (among others) using their infringing website and their own website to harm Plaintiffs in Virginia. Numerous USGA competitors in Virginia have seen, adopted, shared, and/or repeated Defendants' false narratives and disparaging and misleading statements about Plaintiffs and further disseminated Defendants' false, misleading, and defamatory content to an even broader Virginia audience. Zaal Decl. ¶ 32.

For example, Haunts of Richmond—a USGA competitor ghost tour operator in Richmond, Virginia, whose website was hyperlinked on Defendants' infringing website and its own website—

11

has adopted and continues to perpetuate Defendants' defamatory narratives about Plaintiffs in Virginia. *Id.* ¶ 33–34; *see, e.g.*, *id.* at Ex. 1 (Haunts of Richmond's August 7, 2025 Facebook post claiming that "copycats chase us" and alluding to "imitators … creeping in[to Richmond]"). As set forth in greater detail in the Complaint, Defendants and their co-conspirators posted baseless and disparaging comments in response to a YouTube video about Plaintiffs, published by Simply Strange (@Simply_Strange) on April 3, 2025. Zaal Decl. ¶ 35; *see* Compl. ¶¶ 64–65. Chris Houlihan[3] ("Houlihan"), Vice President of Haunts of Richmond, posted the following comments in response to the video, to which Defendants replied:





Zaal Decl. ¶ 35, Ex. 2.

Houlihan's false and misleading assertions about Zaal being dishonest, Plaintiffs "posting false reviews for themselves to inflate their credibility," Plaintiffs "employ[ing] tactics to have negative reviews removed from platforms," and Plaintiffs "lift[ing] 'their' tour material from the

---

[3] The YouTube profile page for @Dead-Talker-209 identifies him as "Chris H." "Chris H." is Chris Houlihan, Vice President of Haunts of Richmond. Zaal Decl. ¶ 36.

established tour companies" can be directly traced to Defendants' blog posts. Zaal Decl. ¶ 37; *see, e.g.*, Compl. Ex. 12 (Defendants referring to Zaal as "ethically challenged" and stating "if he can't beat us fairly, he just tries to cheat"); Compl. Ex. 9 (Defendants stating: "there is direct recorded proof of the company willfully redirecting USGA's negative customer reviews to the Google reviews pages of their competitors, while directing all positive reviews to their own Google reviews page"); Compl. Ex. 7 (Defendants stating that USGA "sneak[s] onto those established company's tours with the sole objective to steal their intellectual property in the form of ghost tour content and stories").

As noted, Defendants responded directly to Houlihan's comments and specifically directed Houlihan, a Virginia resident and Richmond ghost tour operator, to their website—which, as Defendants asserted to numerous other commenters, contains their "blog posts, with supporting evidence on this topic." Zaal Decl. ¶ 38, Ex. 2.

Taking its cue from Defendants, Haunts of Richmond then compiled a "coast-to-coast list of independently run ghost tours," which it published in a blog post on June 17, 2025 and subsequently shared on Facebook. Zaal Decl. ¶ 39, Ex. 3. Haunts of Richmond's list contains many of the same tours listed on Defendants' websites and provides active links to USGA competitors in Virginia, including: Alexandria Colonial Tours, Ghosts of Staunton, Haunted Williamsburg, Spooks & Legends (Williamsburg, VA), and The Ghost Tour (Williamsburg, VA). *See id.* Haunts of Richmond's list, published on its Virginia-based website, also provides an *active link to Defendants' website. See id.* After sharing its list on Facebook, co-conspirator American Ghost Adventures commented "Thank you!!," further demonstrating Haunts of Richmond's coordinated involvement in Defendants' overarching campaign to attack and harm Plaintiffs through false, defamatory, and misleading statements. *Id.* ¶ 40, Ex. 4.

13

Similarly, Ghosts of Staunton, a competitor ghost tour operator in Staunton, Virginia, has joined in Defendants' campaign to cause competitive and reputational harm to Plaintiffs in Virginia. Zaal Decl. ¶ 41. On June 21, 2025, Ghosts of Staunton shared Defendants' January 2, 2025 blog post titled "US Ghost Adventures games Google to deceive guests in Annapolis!" (Compl. Ex. 11) on its Facebook page, commenting that "there does seem to be plenty of public information available in regards to how this tour group [USGA] may operate," and that the blog post "is a very interesting read." Zaal Decl. ¶ 41, Ex. 5.

On July 4, 2025, Ghosts of Staunton shared Defendants' January 2, 2025 blog post titled "Ghost tours nationwide are infuriated by US Ghost Adventures!" (Compl. Ex. 10) on its Facebook page. Zaal Decl. ¶ 42, Ex. 6. Ghosts of Staunton repeated unsubstantiated allegations against USGA and reiterated that there "seems to be plenty of information available in regards to this tour operation available to the public," and "this latest article submitted to us is a very interesting read." *Id.* In response to Ghosts of Staunton's post, the founder of Columbus Ghost Tours provided a link to its July 1, 2025 blog post containing a list of locally-owned ghost tours that heavily overlaps with Defendants' and Haunts of Richmond's listings and includes active links to Defendants' website, as well as USGA competitors in Virginia. *Id.* ¶ 43, Ex. 6. Houlihan also commented on Ghosts of Staunton's post, stating "you can find multiple instances of [USGA] setting up in new cities, claiming to be #1 before they offer their first tour AND having 5-star reviews posted before offering their first tour. It's a scheme to get Google to notice you fast." *Id.* ¶ 44, Ex. 6. Subsequently, on July 6, 2025, Ghosts of Staunton posted the links to both Columbus Ghost Tours's and Haunts of Richmond's lists of USGA competitors on Facebook. *Id.* ¶ 45, Ex. 7.

14

In its comments to the Simply Strange YouTube video, Defendants readily admit that "[t]here are a ***handful of us actively engaged in a battle against Lance Zaal***," and that they are "in ***constant communication with other tour operators***" in furtherance of that effort:



@AnnapolisGhostTours 4 months ago
I'm the owner of Annapolis Ghost Tours. I would love to comment upon, or speak further with you about this matter. That one post you shared in the video was just the tip of the iceberg of scummy shadiness by Lance Zaal and US Ghost Adventures! We have reams of evidence of both illegal and unethical business practices in which US Ghost Adventures has engaged against us and other tour companies. There are a handful of us actively engaged in a battle against Lance Zaal in a David vs. Goliath fight! I can be reached at the number below, or via this email address. I am also in constant communication with other tour operators who are fighting similar battles. Thanks in advance, and I loo forward to speaking with you!

*Id.* ¶ 46, Ex. 2 (emphasis added). As demonstrated above, these other tour operators appear to include Haunts of Richmond, Ghosts of Staunton, and others in Virginia's hospitality and tourism industry. *Id.*

Thus, it is apparent that Defendants' efforts to target Virginia with their false, defamatory, and misleading statements have been effective in targeting Virginia customers and residents, and have been seen, adopted, and perpetuated in Virginia by the same USGA competitor tours in Virginia that Defendants actively promoted on the infringing website and their own website. *Id.* ¶ 47. To the extent there could be any question as to the sufficiency and volume of Defendants' efforts and success in targeting Virginia, jurisdictional discovery would be expected to reveal the broad depth and success of Defendants' efforts to perpetuate their false narratives and harm Plaintiffs in Virginia. *Id.* ¶ 48.

For example, Carter admits he is an active participant in the private Facebook group, Professional Ghost Tour Guides, and was asked to be a moderator of the group. *Id.* ¶ 49; *see* Dkt. 7-1, ¶ 17.  Plaintiffs contend this private forum was used by Defendants and other competitor tours, including those in Virginia, to coordinate their campaign to vilify, defame and disparage, competitively harm, and interfere with USGA, its business, owner, employees, products, and services in Virginia and elsewhere. Zaal Decl. ¶ 49–50; *see, e.g.*, *id.* at Ex. 8 (Facebook post from

15

a member of the private group, noting that the 2024 Professional Ghost Tour Guides Conference was held in Richmond, Virginia and was hosted by Haunts of Richmond). Jurisdictional discovery that captures the content in this private Facebook group is expected to further support personal jurisdiction over Defendants in Virginia.

## II.    ARGUMENTS AND AUTHORITIES

### a.    12(B)(2) STANDARD OF REVIEW

The standard of review for personal jurisdiction "varies according to the posture of the case and the evidence that has been presented to the court." *Grayson v. Anderson*, 816 F.3d 262, 268 (4th Cir. 2016). Where, as here, a district court "considers a question of personal jurisdiction based on the contents of a complaint and … [declarations], the plaintiff has the burden of making a *prima facie* showing in support of its assertion of jurisdiction." *Universal Leather, LLC v. Koro AR, S.A.*, 773 F.3d 553, 558 (4th Cir. 2014); *Bochan v. La Fontaine*, 68 F. Supp. 2d 692, 697 (E.D. Va. 1999) ("[W]hen a court rules on this issue in reliance upon the complaint and affidavits alone, a plaintiff need only make a *prima facie* showing of a sufficient jurisdictional basis to survive the jurisdictional challenge."). Generally, in deciding whether the plaintiff has established a *prima facie* showing of personal jurisdiction, "the court must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." *Combs v. Bakker,* 886 F.2d 673, 676 (4th Cir. 1989).

Thus, if a "defendant has provided evidence which denies facts *essential for jurisdiction*, the plaintiff must, under threat of dismissal, present sufficient evidence to create a factual dispute on each jurisdictional element which … defendant has presented evidence[, but w]hen conflicting facts are contained in the affidavits, they are to be resolved in the plaintiff's favor." *Indus. Carbon*

16

*Corp. v. Equity Auto & Equip. Leasing Corp.*, 737 F. Supp. 925, 926 (W.D. Va. 1990) (internal citations omitted) (emphasis added).

Although "[c]ourts have held that specific jurisdiction requires a 'claim-specific analysis,' **[the] court may**, nonetheless, **exercise 'pendent personal jurisdiction'** *over any claim that arises out of a common nucleus of operative facts* as the claim over which the court has personal jurisdiction." *Savvy Rest, Inc. v. Sleeping Organic, LLC*, 2019 WL 1435838, at *4 (W.D. Va. 2019)[4] (emphasis added); *see also United States v. Botefuhr*, 309 F.3d 1263, 1273 (10th Cir. 2002) (noting that "the majority of federal district courts and every circuit court of appeals to address the question have upheld the application of pendent personal jurisdiction" and finding "no reason why, in certain situations, the assertion of pendent personal jurisdiction would be inappropriate"); *Noble Sec., Inc. v. MIZ Eng'g, Ltd.*, 611 F. Supp. 2d 513, 556 (E.D. Va. 2009) (concluding, based on Fourth Circuit precedent, that the court may exercise "pendent personal jurisdiction over claims arising from a common nucleus of operative fact, whether the additional claim is a state claim or a federal claim") (citing *ESAB Grp., Inc. v. Centricut, Inc.*, 126 F.3d 617, 628 (4th Cir. 1997)).

### b.  SPECIFIC PERSONAL JURISDICTION EXISTS OVER DEFENDANTS

Defendants contend their contacts with Virginia are insufficient to establish specific personal jurisdiction. The record, however, demonstrates that Plaintiffs have established a *prima facie* showing of specific personal jurisdiction over Defendants, and Defendants have not (and cannot) presented evidence on any unrebutted fact that is essential for jurisdiction. Instead, the facts set forth in the Complaint and Declaration of Lance Zaal demonstrate that the exercise of specific personal jurisdiction over Defendants is proper as to all claims. *See Indus. Carbon Corp.*,

---

[4] citing *Gatekeeper Inc. v. Stratech Sys., Ltd.*, 718 F. Supp. 2d 664, 667–68 (E.D. Va. 2010), *Hicks v. Jayco, Inc.*, 2018 WL 1363843, at *8 (M.D.N.C. 2018), and *N.C. Mut. Life Ins. Co. v. McKinley Fin. Serv., Inc.*, 386 F. Supp. 2d 648, 656 (M.D.N.C. 2005).

17

737 F. Supp. at 926 ("When conflicting facts are contained in the affidavits, they are to be resolved in the plaintiff's favor.").

To determine whether personal jurisdiction over a non-resident defendant exists, the Court must engage in a two-part inquiry. *Mitrano v. Hawes*, 377 F.3d 402, 407 (4th Cir. 2004). First, the Court must determine whether Virginia's long-arm statute, Va. Code § 8.01-328.1, authorizes jurisdiction. *Id.* Second, the Court must decide whether the exercise of jurisdiction is consistent with due process. *Id.*; *see Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 277 (4th Cir. 2009) (due process requires "certain minimum contacts with [Virginia] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice").

Because Virginia's long-arm statute extends personal jurisdiction to the full extent permitted by the Due Process Clause, "the statutory inquiry necessarily merges with the constitutional inquiry, and the two inquiries essentially become one." *Young v. New Haven Advocate*, 315 F.3d 256, 261 (4th Cir. 2002) (internal citation omitted). For practical purposes, there is only one question: "whether [defendant] had sufficient minimum contacts with Virginia to satisfy due process requirements." *Diamond Healthcare of Ohio, Inc. v. Humility of Mary Health Partners*, 229 F.3d 448, 450 (4th Cir. 2000) (internal citation omitted).

The Due Process analysis considers whether the "defendant's conduct and connection with the State are such that he should reasonably anticipate being ha[i]led into court there." *Verizon Online Servs. v. Ralsky*, 203 F. Supp. 2d 601, 612 (E.D. Va. 2002). There are two forms of personal jurisdiction: general and specific. *Helicopteros Nacionales de Colom., S.A. v. Hall*, 466 U.S. 408, 414–15 (1984). "The standard for determining the existence of personal jurisdiction over a nonresident defendant varies, depending on whether the defendant's contacts with the forum state also provide the basis for the suit." *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334

F.3d 390, 397 (4th Cir. 2003). When a defendant's contacts with the state form the basis of the suit, "specific jurisdiction" is available, whereas with "general jurisdiction" the contacts need to be pervasive to justify jurisdiction on matters unrelated to the contacts which formed the basis of the suit. *Id.*

Specific personal jurisdiction is "confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Goodyear Dunlop Tire Ops., S.A. v. Brown*, 564 U.S. 915, 919 (2011). In determining whether a court has specific jurisdiction over a defendant, the court should consider: "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *Consulting Eng'rs Corp.*, 561 F.3d at 278; *Mitrano*, 377 F.3d. at 407.

In deciding whether it can exercise specific personal jurisdiction over a defendant, "a court must weigh the totality of the facts before it." *Gilmore v. Jones*, 370 F. Supp. 3d 630, 652 (W.D. Va. 2019) (internal citation omitted). "*Even a single contact* may be sufficient to create jurisdiction when the cause of action arises out of that single contact, provided that the principle of fair play and substantial justice is not thereby offended." *Id.* (quoting *Carefirst*, 334 F.3d at 397) (emphasis added).

### c. Defendants Committed Tortious Conduct Through Their Online Activities in Virginia, Harming Plaintiffs in Virginia and Giving This Court Specific Personal Jurisdiction over Defendants

The Fourth Circuit has adopted the "sliding scale" model for specific jurisdiction for online activity. *ALS Scan, Inc. v. Dig. Serv. Consultants, Inc.*, 293 F.3d 707, 713 (4th Cir. 2002) (adopting the model set forth in *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119 (W.D. Pa. 1997)).

19

At one end of the scale, personal jurisdiction is not exercised if the defendant does nothing more than post information on a publicly available but *"passive" or static website*. *ALS Scan*, 293 F. 3d at 714–15 (citing *Zippo*, 952 F. Supp. at 1124). If, however, a website is interactive or semi-interactive, "the exercise of jurisdiction is determined by examining the *level of interactivity* and *commercial nature of the exchange of information* that occurs on the Web site"; these cases occupy the "middle ground" on the sliding scale. *Id.* (emphasis added). At the other end of the scale are situations "where a defendant *clearly does business over the Internet*" and "enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet," in which case personal jurisdiction is clearly proper. *Id.*[5](emphasis added).

When adopting *Zippo*, the Fourth Circuit concluded that a state may "exercise judicial power over a person outside of the State when that person (1) directs ***electronic activity into the State***, (2) with the ***manifested intent of engaging in business or other interactions within the State***, and (3) that activity creates, in a person within the State, a potential cause of action cognizable in the State's courts." *ALS Scan*, 293 F. 3d at 714.

These standards demonstrate that this Court's exercise of specific jurisdiction over Defendants is proper. *See, e.g.*, *Robinson v. Bartlow*, 2012 WL 4718656, at *5 (W.D. Va. 2012) (Moon, J.) (finding "the active nature of the JoeyBra LLC website provides an additional basis for this Court's exercise of specific personal jurisdiction over the Defendant LLC"); *Gilmore*, 370 F. Supp. 3d at 652 (Moon, J.) (finding, for example, a single defamatory article posted to a website

---

[5] The *ALS Scan* Court ultimately found: (1) the website at issue in that case was passive and static, (2) the defendant had no contact with the forum other than a "general publication of its website on the internet," and (3) the website was wholly unrelated to the claims at issue. *ALS Scan*, 293 F. 3d at 715. Thus, the website in that case fell at the far end of the scale showing no jurisdiction.

and video posted to YouTube was "sufficiently targeted at a Virginia audience"; "[a]lthough neither the ... website nor YouTube channel ha[d] a Virginia-specific focus, the exclusive focus of [defendant's] publications was a Virginia event and a Virginia citizen"); *Bright Imperial Ltd. v. RT MediaSolutions, S.R.O.*, 2012 WL 1831536, at *6, *8 (E.D. Va. 2012) (exercising jurisdiction over a foreign company operating an active, adult website that had only 16 users in Virginia, out of 8.1 million, who generated only $1,620 in revenue, and stating "[a]lthough these numbers might seem trivial in relative terms, when viewed as an absolute value, sixteen contacts is certainly not insignificant"); *Alitalia-Linee Aeree Italiane S.p.A. v. Casinoalitalia.Com*, 128 F. Supp. 2d 340, 349–50 (E.D. Va. 2001) (finding that five Virginia users registered with an interactive website was sufficient to confer specific personal jurisdiction over defendant); *Bochan*, 68 F. Supp. 2d at 694–95 (finding a *prima facie* showing of jurisdiction based on defendants' "use of the AOL account, a Virginia-based service, to publish the allegedly defamatory statements").[6]

    In *Savvy Rest*, for example, the Court held that Sleeping Organic, who used its active website to sell 80 mattresses to residents of Virginia and generate more than $200,000 in gross sales, purposefully availed itself of the privilege of conducting business in the state and was subject to the court's jurisdiction, "even if Sleeping Organic did not specifically target Virginia

---

[6] *See also Verizon Online Servs., Inc.*, 203 F. Supp. 2d at 613 ("Allowing defendants to escape personal jurisdiction in a forum they have exploited for pecuniary gain while causing a tort to a Virginia resident would constitute a manifest unfairness to the rights of [plaintiff] and the interests of Virginia.") (internal citation omitted); *Bus. Info. Sys. v. Prof'l Gov'tl Rsch. & Sols., Inc.*, 2002 WL 32747668, at *6 (W.D. Va. 2002) ("For instance, a hunter on the county line between Virginia and North Carolina who negligently fired a shot into the air [cannot] escape personal jurisdiction in Virginia for accidently shooting someone in Virginia because he did not intend or even know that the shot would land in Virginia.") (quoting *Verizon Online Servs.*, 203 F. Supp. 2d at n.13); *see Verizon Online Servs.*, 203 F. Supp. 2d at 613 ("[I]n light of the 'inescapable fact of modern life that a substantial amount of business is transacted solely by mail and wire communications across state lines,' the absence of physical contact or presence in the state will not defeat jurisdiction so long as the defendant is deliberately engaged in efforts with the state.") (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985)).

21

customers." 2019 WL 1435838, at *5. As the Court explained, "[u]nlike the internet activity at issue in *ALS Scan*, Sleeping Organic's web presence is clearly not 'passive'…. [because] [t]he website allows orders to be placed by customers, and Sleeping Organic regularly conducts sales transactions through the website." *Id.*

In *Thousand Oaks Barrel Co., LLC v. Deep S. Barrels LLC*, 241 F. Supp. 3d 708, 715 (E.D. Va. 2017), plaintiff sued a Texas company and related parties alleging trademark infringement, unfair competition, and other claims. The defendant asserted it had "no offices in Virginia, own[ed] no property in the state, d[id] not employ anyone in Virginia, and … never attended or marketed its products at any festivals in Virginia." *Id.* Instead, it used a website with only 251 customers in Virginia since the company's founding in 2010, and less than 2% of its sales or shipments were in Virgina since 2013. *Id.* Applying *ALS Scan*, the court found plaintiff established personal jurisdiction because "[defendant] directed electronic activity into Virginia with the manifest intent to do business with Virginia residents when it set up an interactive e-commerce website accessible to Virginia residents and used that website to fulfill Virginia customers' Internet purchases." *Id.* at 716. "The lack of ads targeted at Virginia also [did] not change the fact that [defendant] used its website to reach into Virginia to do business there." *Id.* at 716–17 (internal citation omitted).

Here, Plaintiffs' evidence, the allegations in the Complaint, and all reasonable inferences drawn therefrom demonstrate that Plaintiffs have established a *prima facie* showing of specific personal jurisdiction over Defendants because all claims arise from Defendants' targeted campaign that they launched and perpetrated using Defendants' *active* websites (and blog posts on those websites) to target Virginia customers and residents and vilify, defame and disparage, competitively harm, and interfere with USGA, its business, owner, employees, products, and services in Virginia. *See generally supra* § I; Zaal Decl. Further, as is apparent from the

22

jurisdictional facts set forth above, Defendants succeeded in their efforts to target Virginia and even coordinated and communicated directly with USGA's Virgina competitors to direct them to Defendants' false, defamatory, and misleading statements on Defendants' website to perpetuate their campaign in Virgina. *See, e.g.*, Zaal Decl. ¶¶ 32, 47.

The evidence also shows that it is highly probable and reasonable to conclude that: (1) a substantial portion of Tours & Crawls's customers are Virginia residents and located in nearby Virgina; (2) a substantial portion of Tours & Crawls's Virginia customers book tours from Virginia using Tours & Crawls's website; (3) Tours & Crawls generates substantial revenue from Virginia customers through its website; and (4) Tours & Crawls is likely aware that nearby Virginia customers are a substantial component of its customer and revenue base. *Id.* ¶ 11. Defendants have offered no evidence to the contrary. If the Court believes otherwise, Plaintiffs hereby request jurisdictional discovery from Defendants to establish the depth and breadth of their (1) business contacts with Virginia, and (2) unlawful campaign and contacts in Virginia.

### d. THE CASES CITED BY DEFENDANTS ARE INAPPOSITE AND UNPERSUASIVE

In their Memorandum in Support (Dkt. 7), Defendants cite authorities that are inapposite and unpersuasive. None of these cases involved active websites that specifically targeted Virginia customers and residents to direct them to businesses that compete against plaintiffs in Virginia, while publishing false, defamatory, and misleading statements about plaintiffs to drive those Virginia customers to Plaintiffs' competitors. And none of these cases involved direct contact by defendants with competitor businesses in Virginia to induce them to combine their efforts to attack plaintiffs in Virginia. *But see* Zaal Decl. Ex. 2.

In *Carefirst*, the websites that allegedly gave rise to personal jurisdiction were "'semi-interactive,' in that they contain features that make it possible for a user to exchange information

with the host computer." 334 F.3d at 400. But the only "concrete evidence of online exchanges between [the defendant's site] and Maryland residents was the single donation initiated by Carefirst's counsel…. ostensibly made to bolster [jurisdiction]." *Id.* Further, nothing on the website targeted Maryland; it generally requested donations from anyone, anywhere. *Id.* Here, in contrast, Defendants actively linked to USGA competitor tours in Virginia, and those links led to active purchasing sites for Virginia tours. Further, Defendants' infringing website has been found to "**link[ ] directly to … commercial websites** of the Complainant's competitors, including the Respondent's **own website**" and otherwise "fit[ ] the paradigm of **misleading Internet users for commercial gain** using a domain name that is confusingly similar to a trademark." *Id.* at Ex. 2, at 4 (emphasis added).

In *Young*, the Court considered a libel suit by a warden of a Virginia prison against Connecticut newspapers regarding the alleged conditions at the prison. 315 F.3d at 259. The Court noted that one newspaper had no mail subscribers in Virginia, neither paper solicited subscriptions from Virginia residents, and no one had traveled to Virginia to write the news articles. *Id.* These passive activities are a far cry from Defendants' active engagements with Virginia businesses and residents to generate a Virginia audience and tortiously injure Plaintiffs in Virginia.

*Fidrych v. Marriott Int'l, Inc.*, 952 F.3d 124, 139 (4th Cir. 2020) is likewise inapposite. In *Fidrych*, the Court found no specific jurisdiction because plaintiff merely alleged that he used an interactive website in South Carolina to view (but not book) a hotel in Italy where he later stayed and injured his hand when a glass door shattered. *Id.* at 129, 139. His injury, however, did not arise from the content or use of the website and had "nothing to do with the claims [he] asserted." *Id.* at 139. Here, in contrast, all of Plaintiffs' claims arise from or relate to the content and use of the

24

infringing website and Defendants' website, and tortious statements posted thereon, which were specifically directed to Virginia customers and residents (among others).

Finally, *Edwards v. Schwartz*, 378 F. Supp. 3d 468, 494 (W.D. Va. 2019) is inapposite and distinguishable. In *Edwards*, the authors of defamatory communications took *no* affirmative steps to direct their communications to Virginia and had no intent to target Virginia readers. *Id*. Here, of course, the only purpose and intent in listing competitor tours in Virginia on a website is to capture the attention of Virginia customers and residents interested in Virginia tours. Thus, it is plain Defendants promoted Virginia tours to capture a Virginia audience.  Defendants then had the Virginia audience's attention to defame, harm, and mislead them regarding Plaintiffs' business and operations in Virginia and (elsewhere), Thus, it is that (1) Defendants directed electronic activity into Virginia, (2) Defendants engaged in interactions within Virginia and its residents*,* (3) Defendants' activity created, in Plaintiffs, the causes of action cognizable here, and (4) jurisdiction is proper. *See ALS Scan*, 293 F. 3d at 714.

### III.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants' Rule 12(b)(2) Motion to Dismiss.

25

Dated:  August 8, 2025

Respectfully submitted,

/s/ Joshua R. Treece

Joshua F. P. Long (VSB No. 65684)
Joshua R. Treece (VSB No. 79149)
Christine S. Ward (VSB No. 97744)
WOODS ROGERS VANDEVENTER
BLACK PLC
10 S. Jefferson Street, Suite 1800
Roanoke, Virginia 24038-4125
Telephone: (540) 983-7600
Facsimile: (540) 983-7711
josh.long@woodsrogers.com
joshua.treece@woodsrogers.com
christine.ward@woodsrogers.com

*Counsel for Plaintiffs US Ghost
Adventures, LLC and Lance Zaal*

26

## CERTIFICATE OF SERVICE

I hereby certify that on this 8th day of August, 2025, a true and accurate copy of the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of the same to all counsel of record:

/s/ Joshua R. Treece

27