IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Lynchburg Division

| | |
|---|---|
| US GHOST ADVENTURES, LLC, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Case No. 6:25cv00048 |
| | ) |
| TOURS & CRAWLS, LLC, et al., | ) |
| | ) |
| Defendants. | ) |

**REPLY TO PLAINTIFFS' MEMORANDUM IN OPPOSITION TO
DEFEDANTS' RULE 12(b)(2) MOTION TO DISMISS**

COME NOW the defendants, Tours & Crawls, LLC ("Tours & Crawls") and Mike Carter ("Carter") (collectively, the "Defendants"), by counsel, and for the sole purpose of replying to Plaintiffs' Memorandum in Opposition to Defendants' Rule 12(b)(2) Motion to Dismiss (ECF 10) ("Opposition") respectfully state the following:

1. Despite the great length of their Complaint (ECF 1), Opposition (ECF 10), and supporting documentation, Plaintiffs have not made, and cannot make, a *prima facie* showing of specific personal jurisdiction in this case.

2. As discussed in more detail below, the cases cited in the Opposition are materially distinguishable from the present case and should not guide the Court's decision herein.

3. Moreover, the facts set forth in the Opposition – including the new facts not mentioned in the Complaint – do not demonstrate the purposeful availment necessary to support the exercise of personal jurisdiction over Defendants in this case.

**I.      The e-commerce cases cited by Plaintiffs are materially distinguishable.**

4. In their Opposition, Plaintiffs cite three e-commerce cases that are materially distinguishable from the facts of the present case.

5. Plaintiffs first cite <u>Robinson v. Bartlow</u>, which involved a patent infringement claim based on the defendant's marketing and selling of a certain brassiere. Case No. 3:12-cv-00024, 2012 U.S. Dist. LEXIS 143323, at *2 (W.D. Va. Oct. 3, 2012). While the Court certainly considered the interactive nature of the defendant's website in finding a purposeful availment, the Court also considered facts that simply are not present in the instant case. Specifically, the defendant had not only received orders from Virginia residents via its website, but had made multiple shipments of products into Virginia, some to paying customers and others to individuals who had contributed to the defendant's Kickstarter fundraising campaign. <u>Id.</u> at *11-15.

6. Plaintiffs next cite <u>Savvy Rest, Inc. v. Sleeping Organic, LLC</u>, which involved trademark infringement and other claims based on the defendant's marketing and selling of certain mattress products. Civil Action No. 3:18CV00030, 2019 U.S. Dist. LEXIS 54259, at *1-5 (W.D. Va. Mar. 29, 2019). Again, the Court considered the interactive nature of the defendant's website in finding a purposeful availment. However, once again, the Court also considered jurisdictional facts not present in this case. Specifically, much like the defendant in <u>Robinson</u>, the defendant in <u>Savvy Rest</u> had made multiple shipments of products into Virginia. In fact, the evidence showed the defendant had sold over 50 mattresses to Virginia residents in the preceding 5 years, and that the defendant had generated more than $219,000 in revenue from sales to Virginia residents in the preceding 7 years. <u>Id.</u> at *6-7, 14-15.

7. Plaintiffs then cite <u>Thousand Oaks Barrel Co., LLC v. Deep South Barrels LLC</u>, which involved claims of trademark and copyright infringement based on the defendant's marketing and selling of various products. 241 F. Supp. 3d 708, 711-12 (E.D. Va. 2017). Yet again, the court considered the interactive nature of the defendant's website in finding a purposeful availment. However, yet again, the court also considered jurisdiction facts not present in the

instant case. Specifically, much like the defendants in Robinson and Savvy Rest, the defendant in Thousand Oaks had made multiple (99) shipments of products into Virginia. Id. at 715.

8. In contrast to the above cases, while Tours & Crawls' website allows customers to make reservations and pay for services, Tours & Crawls does not ship goods into Virginia or provide services in Virginia. Instead, Tours & Crawls provides services exclusively in Maryland. See Exhibit A (Supp. Carter Decl. ¶ 1);[1] (ECF 7-1) (Carter Decl. ¶ 9).

9. In addition, Plaintiffs' claims are not based on the portion of Tours & Crawls' website that allows customers to make reservations and pay for services. Instead, Plaintiffs' claims related to Tours & Crawls' website are based on (1) the webpage containing links to other local ghost tour companies and (2) blog posts.

10. The blog posts are not interactive, and Tours & Crawls' website does not permit users to make reservations or pay for goods or services provided by any other company (in Virginia or elsewhere). See Exhibit A (Supp. Carter Decl. ¶ 2). Moreover, Defendants do not receive a referral fee or other financial benefit from anyone who happens to follow a link and book a tour with one of the Virginia companies. (ECF 7-1) (Carter Decl. ¶ 8).

11. Still further, as Plaintiffs concede, a substantial number of ghost tour customers are from out-of-town. (ECF 10-1) (Zaal Decl. ¶¶ 5, 7, 10). This means there is a distinct possibility anyone researching USGA's or its competitors' operations in Virginia – on Tours & Crawls' website or elsewhere – would not be a Virginia resident.

---

[1] The Supplemental Declaration of Michael Carter (Exhibit A) solely responds to new allegations and arguments raised by Plaintiffs in their Opposition. See generally McGinnis v. Se. Anesthesia Assocs., 161 F.R.D. 41, 42 (W.D.N.C. 1995) (holding Rule 6(d), which is the predecessor of and substantially similar to the current Rule 6(c)(2), does not bar the filing of an affidavit solely to support a reply brief); Cardenas v. Dorel Juvenile Grp., 230 F.R.D. 635, 636 & n.4 (D. Kan. 2005) (collecting authority for the same proposition).

12. Accordingly, the e-commerce cases cited by Plaintiffs do not support the exercise of personal jurisdiction over Defendants in this case.

## II.     The "ongoing relationship" cases cited by Plaintiffs are materially distinguishable.

13. In their Opposition, Plaintiffs cite two cases involving ongoing web-based customer relationships, the likes of which are not present in the instant case.

14. Plaintiffs first cite <u>Bright Imperial Ltd. v. RT MediaSolutions, S.R.O.</u>, which involved trademark infringement and cybersquatting claims brought by a United States-based company against a European citizen and two European companies.  Civil Action No. 1:11-cv-935-LO-TRJ, 2012 U.S. Dist. LEXIS 70000, at *3-4 (E.D. Va. May 18, 2012).  All parties operated websites containing adult content and using the mark "REDTUBE."  <u>Id.</u> at *4.  While the court found personal jurisdiction despite the defendants having a mere sixteen registered users in Virginia, the court highlighted in its rationale the "quality" of the defendants' contacts with the registered users.  <u>Id.</u> at *3-4, 21-22.  Specifically, the court cited (1) the ongoing ability of registered users in Virginia to purchase "coins," a site-specific form of currency, and redeem such coins in exchange for the right to view adult content on the defendants' website; (2) the defendants' ongoing storage of adult content such that registered users could repeatedly view the content (in perpetuity) after purchasing it; and (3) the defendants' sending of periodic e-mails and "bonus" coins to registered users in Virginia for purposes of encouraging continued usage of the defendants' website.[2]  <u>Id.</u> at *21-22.

---

[2] The court also found that, even if the defendants were not subject to personal jurisdiction in Virginia, the exercise of jurisdiction would nevertheless be appropriate under Rule 4(k)(2).  <u>Id.</u> at *23-29.  <u>See generally</u> Fed. R. Civ. P. 4(k)(2) (permitting jurisdiction when (1) a claim arises under federal law; (2) the defendant is not subject to jurisdiction in any state court, and (3) exercising jurisdiction does not offend the constitution or laws of the United States).  In other words, even if the court was wrong to find personal jurisdiction, such finding was harmless error.

15. Plaintiffs then cite Alitalia-Linee Aeree Italiane, S.p.A. v. Casinoalitalia.com, which involved trademark infringement and cybersquatting claims brought by an Italian airline against the foreign registrant of a domain name used in connection with an online casino gambling business unrelated to the Italian airline. 128 F. Supp. 2d 340, 341 (E.D. Va. 2001). Much like in the Bright Imperial case discussed above, while the court found personal jurisdiction despite the defendants having a mere five registered users in Virginia, the court again emphasized the quality of the defendants' contacts with the registered users. Id. at 348-50. Specifically, the court cited (1) the ongoing contractual relationship between the defendants and registered users; (2) the ongoing ability of registered users to purchase "credits," a site-specific form of currency, and redeem those credits to play blackjack, poker, and other casino games (all of which were interactive); and (3) the ongoing ability of registered users to win "credits" that could be redeemed for United States currency. Id. at 342, 350.

16. In contrast to the above cases, Tours & Crawls does not maintain an ongoing web-based relationship with its customers. In fact, other than providing the purchased ghost tour or pub crawl in Maryland, Tours & Crawls does not maintain an ongoing relationship of any kind with its customers. When the ghost tour or pub crawl is completed, the relationship ends. See Exhibit A (Supp. Carter Decl. ¶ 3).

17. In addition, unlike the registered users in Bright Imperial, individuals do not pay a fee to gain access to Tours & Crawls' website or its content, Tours & Crawls does not agree to store content on its website in perpetuity (or for any amount of time), and Tours & Crawls does not send promotional e-mails or other "bonuses" to Virginia users. See Exhibit A (Supp. Carter Decl. ¶ 4); (ECF 7-1) (Carter Decl. ¶ 7).

18. Furthermore, unlike the casino website in <u>Alitalia-Linee</u>, Tours & Crawls' website does not allow users to interact with each other, nor does Tours & Crawls' website allow users to earn credits or money via web-based activities. <u>See</u> Exhibit A (Supp. Carter Decl. ¶ 5).

19. Still further, as noted above, there is no claim that the portion of Tours & Crawls' website used to reserve and pay for Tours & Crawls' services infringes on Plaintiffs' alleged trademark rights,[3] or that any portion of Tours & Crawls' website related to the reservation and payment for Tours & Crawls' services is defamatory or otherwise actionable.

20. Finally, to the extent Plaintiffs argue the other websites established by Carter steered customers to Tours & Crawls' website and/or prompted customers to select Tours & Crawls over USGA, any such loss (which has not been shown) would be a loss suffered in Maryland, where Tours and Crawls and USGA's competing tour operate.

21. Accordingly, the "ongoing relationship" cases cited by Plaintiffs do not support the exercise of personal jurisdiction over Defendants in this case.

### III. The publications at issue are not focused on Virginia.

22. In their Opposition, Plaintiffs cite two cases where personal jurisdiction was exercised based on publications targeting a Virginia resident and/or focusing on Virginia events.

23. Plaintiffs first cite <u>Gilmore v. Jones</u>, a case in which the plaintiff recorded and posted a video of a third-party driving a vehicle into a group of protestors at the "Unite the Right" rally in Charlottesville. 370 F. Supp. 3d 630, 642 (W.D. Va. 2019). When the defendants responded by posting a series of videos and articles that portrayed the plaintiff as a "deep state" operative who conspired to orchestrate violence, the plaintiff filed suit for defamation. <u>Id.</u> The Court found

---

[3] Interestingly, as Plaintiffs note in their Opposition, it is Colonial Ghosts, LLC, not Plaintiffs, that registered and owns the "US GHOST ADVENTURES" mark at issue in this lawsuit. (ECF 10-1) (Zaal Decl. ¶ 12); (ECF 1-1).

personal jurisdiction over all but one of the defendants because the videos and articles at issue focused heavily (or entirely) on a Virginia event and a Virginia citizen's involvement in said event, and because several of the videos and articles referenced a Virginia gubernatorial candidate, Virginia police officers, and/or other Virginia sources. Id. at 654-61. Thus, the videos and articles were of particular interest to a Virginia audience. Id. at 655.

24. Plaintiffs then cite Bochan v. La Fontaine, a case in which the plaintiff, a Virginia resident, filed suit against the defendants, who were residents of Texas and New Mexico respectively, alleging defamation and intentional infliction of emotional distress based on the publication of statements accusing the plaintiff of being of a pedophile. 68 F. Supp. 2d 692, 694-95 (E.D. Va. 1999). The court found a purposeful availment because the defendants' publications "concerned the presumably local activities of an individual each knew was a Virginia citizen," and because the "predominant 'effects'" of the publications were felt in Virginia. Id. at 702-03.

25. In contrast to the above cases, while USGA is organized under Virginia law and has operations in Virginia,[4] the company is headquartered in Pennsylvania and operates in numerous states nationwide. (ECF 1 ¶¶ 2, 9, 11; ECF 10-1 (Zaal Decl. ¶¶ 2-3)). Meanwhile, Zaal is a citizen of Louisiana. (ECF 1 ¶ 3). As such, general comments about USGA and Zaal are not properly construed as specifically targeting Virginia residents.

26. Furthermore, as the cases cited in Defendants' previous brief indicate, the posting of web-based content with the expectation that Virginia residents will see such content does not, in and of itself, constitute the purposeful direction of web-based content to Virginia residents

---

[4] At least one such Virginia operation is through an affiliated company, Colonial Ghosts, LLC. (ECF 10-1) (Zaal Decl. ¶ 15).

7

necessary to establish personal jurisdiction. (ECF 7 ¶¶ 25-28) (discussing <u>Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc.</u>, 334 F.3d 390 (4th Cir. 2003); <u>Fidrych v. Marriott International, Inc.</u>, 952 F.3d 124 (4th Cir. 2020); <u>Young v. New Haven Advocate</u>, 315 F.3d 256 (4th Cir. 2002); and <u>Edwards v. Schwartz</u>, 378 F. Supp. 3d 468 (W.D. Va. 2019)).

27. This is significant, as most of the blog posts at issue in this case discuss the competition between national and local ghost tour companies in general (ECF 1-7, 1-8, 1-9, 1-10), with various posts referencing local ghost tours, legal disputes, and/or other conflicts in Maryland, Massachusetts, Texas, North Carolina, Arizona, Florida, Rhode Island, and California (ECF 1-7, 1-8, 1-9, 1-10, 1-11, 1-12). Notably, the only reference to Virginia identified in any of the blog posts is a reference to a local ghost tour operator meeting Zaal in Williamsburg several years before Zaal launched USGA. (ECF 1-10).

28. Similarly, the article in The Baltimore Banner attributes to Carter certain comments regarding competition with his Annapolis, Maryland company. (ECF 1-13). The article also references disputes in Florida, Arizona, Rhode Island, California, Texas, and Massachusetts but, notably, does not reference any disputes in Virginia. (ECF 1-13).

29. Likewise, the social media posts/comments at issue (many of which were made by third-parties) address issues on a national level or in Maryland, with other state-level references to Massachusetts, Iowa, Florida, New Mexico, California, and Pennsylvania and one international reference to the United Kingdom. (ECF 1-18, 1-20, 1-21). Notably, Defendants have not identified any direct references to operations in Virginia.

30. Accordingly, the <u>Gilmore</u> and <u>Bochan</u> cases cited by Plaintiffs are materially distinguishable from the facts of this case and do not support the exercise of personal jurisdiction over Defendants.

### IV. The new facts raised in the Opposition and supporting documentation do not warrant the exercise of personal jurisdiction.

31. In their Opposition, Plaintiffs' venture beyond the expansive Complaint and mention two events that Plaintiffs maintain support the exercise of specific personal jurisdiction over Defendants. Specifically, Plaintiffs cite (1) Carter's responses to comments posted by "@Dead-Talker-209," who is apparently Chris Houlihan, Vice President of Haunts of Richmond; and (2) Ghosts of Staunton's republication of one of Defendants' blog posts.

32. In addition, Plaintiffs reference the 2024 Professional Ghost Tour Guides Conference that was supposedly held in Richmond, even though Carter did not attend said event. See Exhibit A (Supp. Carter Decl. ¶ 6).

33. As Plaintiffs are asking the Court to exercise specific jurisdiction, the Court should only consider those contacts with Virginia giving rise to Plaintiffs' causes of action (if any). However, even if the Court considers the newly disclosed information in the Opposition and supporting documentation, such information does not warrant the exercise of personal jurisdiction over the Defendants.

34. Indeed, when Carter posted the responses at issue, he did not know the identity of "@Dead-Talker-209" – an anonymous internet user. In fact, Carter did not learn the identity of "@Dead-Talker-209" until Plaintiffs identified him as Chris Houlihan in the Opposition. See Exhibit A (Supp. Carter Decl. ¶ 7).

35. Moreover, even if Carter knew Houlihan's identity and whereabouts (which he did not), two contact requests issued to an individual who had already referred to Zaal as having "a long track record of being loose with the truth," and who had already accused USGA of "posting false reviews for themselves to inflate their credibility" and " lift[ing] 'their' tour material from the

established tour companies" (ECF 10 at 12), do not justify the wholesale exercise of specific personal jurisdiction in this case.

36. Still further, Carter's comments were a general request for evidence related to a nationwide issue that Defendants were personally experiencing in Maryland, not commentary or other engagement on an issue unique to Virginia or of specific interest to a Virginia audience. (ECF 10 at 12).

37. Similarly, the blog post republished by Ghosts of Staunton related to USGA's use of Google to deceive customers in Maryland – not Virginia. (ECF 10 at 15; ECF 1-11). As such, the republication of this blog post does not demonstrate the purposeful availment necessary to exercise specific personal jurisdiction over Defendants in this case.

38. Accordingly, the Court should dismiss this action for lack of personal jurisdiction.

WHEREFORE the defendants, Tours & Crawls, LLC and Mike Carter, respectfully request that the Court dismiss this action for lack of personal jurisdiction and award Defendants any additional relief the Court deems just and appropriate.

TOURS & CRAWLS, LLC and
MIKE CARTER

    /s/
G. Christopher Jones, Jr., Esq. (VSB #82260)
Raymond J. Sinnott, IV, Esq. (VSB #77322)
SINNOTT, NUCKOLS & LOGAN, P.C.
13811 Village Mill Drive
Midlothian, Virginia 23114
(804) 893-3864 (Jones)
(804) 893-3871 (Sinnott)
(804) 378-2610 (Facsimile)
cjones@snllaw.com
jsinnott@snllaw.com
*Counsel for Tours & Crawls, LLC and Mike Carter*

## CERTIFICATE OF SERVICE

I hereby certify that, on this 14th day of August, 2025, a true and accurate copy of the foregoing Reply was filed with the Clerk of Court using the CM/ECF system, which will send a notification of such filing to all counsel of record.

/s/
G. Christopher Jones, Jr., Esq.